IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM "B" MARSHALL and MARGO MARSHALL t/d/b/a STOP THE VIOLENCE PITTSBURGH, <br><br>  Plaintiffs, <br><br> v. <br><br> CITY OF PITTSBURGH and ED GAINEY, <br><br>  Defendants. | Civil Action No. 2:25-cv-1303 <br><br><br><br><br><br> JURY TRIAL DEMANDED <br><br> Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COME NOW, the Plaintiffs, WILLIAM "B" MARSHALL and MARGO MARSHALL, t/d/b/a STOP THE VIOLENCE PITTSBURGH, by and through their attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, ELIZABETH A. TUTTLE, ESQUIRE, MASSIMO TERZIGNI, ESQUIRE, and AMANDA N. SHIELDS, ESQUIRE, and hereby files their Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1. This is an action for the redress of grievances and in vindication of civil rights guaranteed to the Plaintiffs under the Constitution of the United States and the laws enacted in furtherance thereof, including 42 U.S.C. § 1983.

2. This action is brought against the Defendants for violating Plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

3. Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3). Supplemental jurisdiction over Plaintiffs' state law claims is also proper pursuant to 28 U.S.C.A § 1367.

4.    Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

## PARTIES

5.    Plaintiff, William "B" Marshall ("B Marshall") is an adult individual who resides in Allegheny County, Pennsylvania.  Plaintiff B Marshall is married to Plaintiff Margo Marshall.

6.    Plaintiff, Margo Marshall, is an adult individual who resides in Allegheny County, Pennsylvania.  Plaintiff Margo Marshall is married to Plaintiff B Marshall.

7.    Plaintiff, Stop the Violence Pittsburgh, is a not-for-profit group.

8.    Defendant, City of Pittsburgh ("Pittsburgh"), is a Pennsylvania municipal corporation with offices located at 414 Grant Street, Pittsburgh, Pennsylvania 15219.  At all times relevant hereto, Defendant Pittsburgh acted by and through its officials, including, but not limited to, Defendant Ed Gainey.

9.    Defendant, Ed Gainey ("Gainey"), is a United States Citizen.  Plaintiff believes, and therefore avers, that Defendant Gainey is a resident of Allegheny County, Pennsylvania.  Defendant Gainey is now, and was at all times relevant to Plaintiffs' claims, the duly elected mayor of the City of Pittsburgh, employed by the City of Pittsburgh, and purporting to act within the full scope of his authority and office and under color of state law, and pursuant to the statutes, ordinances, regulations and customs and usages of the City of Pittsburgh.

## FACTUAL ALLEGATIONS

10.    In or about 2013, Plaintiffs B Marshall and Margo Marshall founded Plaintiff Stop the Violence Pittsburgh.

11. Plaintiff Stop the Violence Pittsburgh was created with the specific purpose of decreasing violence in Allegheny County and educating the community about African American culture and history.

12. In June of 2013, Plaintiffs hosted their first Juneteenth Celebration in Defendant Pittsburgh's North Shore.

13. Thereafter, Plaintiffs continued to host yearly Juneteenth celebrations within Defendant Pittsburgh. Plaintiffs' Juneteenth celebrations grew year by year and drew thousands of attendees.

14. In 2018, Plaintiffs began hosting their Juneteenth Celebration in Defendant Pittsburgh's Point State Park ("the Point").

15. At that time, Plaintiffs entered into a ten (10) year agreement with the Commonwealth of Pennsylvania, through the Department of Conservation and Natural Resources ("DCNR"), to host their Juneteenth Celebration annually at the Point. Plaintiffs also continued to host their annual Juneteenth Celebration at various other locations in Defendant Pittsburgh's downtown area.

15. In 2019, Plaintiffs hosted their first Soul Food Festival in Defendant Pittsburgh.

16. Like Plaintiffs' successful Juneteenth Celebration, Plaintiffs' Soul Food Festival continued to grow year by year.

17. In 2019, law enforcement officials contacted Defendant Pittsburgh, as well as DCNR, and informed them that Plaintiffs' Juneteenth Celebration was the subject of a credible threat of violence.

18.    In response to that threat, Defendant Pittsburgh's then-mayor, William Peduto ("Peduto"), became a co-sponsor of Plaintiffs' Juneteenth Celebration, on behalf of Defendant Pittsburgh.

19.    As a co-sponsor of the event, Defendant Pittsburgh provided free security for Plaintiffs' Juneteenth Celebration at the Point, as well as throughout the downtown area, by supplying heavy police presence at the event.

20.    In addition to free security, Defendant Pittsburgh also provided in-kind services to Plaintiffs' Juneteenth Celebration. These in-kind services included, but were not limited to, EMS services and staging.

21.    Defendant Pittsburgh continued to act as a co-sponsor of Plaintiffs' Juneteenth Celebration and provided these services through the remainder of Mayor Peduto's term, which ended in 2022.

22.    In January of 2022, Defendant Gainey became the mayor of Defendant Pittsburgh.

23.    For many years prior to his election as mayor, Defendant Gainey was a strong supporter of, and advocate for, Plaintiffs' Juneteenth Celebration.

24.    On or about April 12, 2022, Defendant Gainey's Chief of Staff Jake Wheatley ("Wheatley"), and Lee Schmidt ("Schmidt"), Defendant Pittsburgh's Director of Public Safety, informed Plaintiff B Marshall that Defendant Pittsburgh intended to "take over" Plaintiffs' Juneteenth Celebration starting in 2023.

25.    Messrs. Wheatley and Schmidt further informed Plaintiff B Marshall that he would be permitted to run the event for Defendant Pittsburgh; otherwise, Defendant Pittsburgh would find someone else to run Plaintiffs' Juneteenth Celebration.

26. Plaintiff B Marshall informed Messrs. Wheatley and Smith that he did not accept Defendant Pittsburgh's offer to "take over" Plaintiffs' Juneteenth Celebration.

27. On or about May 3, 2022, Plaintiff B Marshall attended a meeting with Defendant Gainey, Defendant Pittsburgh's City Councilwoman Theresa Kail-Smith ("Kail-Smith"), Mr. Schmidt, Defendant Pittsburgh's Chief Operating and Administrative Officer Lisa Frank ("Frank"), and Defendant Gainey's Deputy Chief of Staff Felicity Williams ("Williams").

28. At that meeting, Defendant Gainey informed Plaintiff B Marshall that it was Defendant Gainey's staff's idea to attempt to "take over" Plaintiffs' Juneteenth Celebration.

29. At that same meeting, Plaintiff B Marshall requested $150,000.00 in funding from Defendant Pittsburgh, along with the continued provision of in-kind services, for Plaintiffs' 2022 Juneteenth Celebration.

30. In or about January of 2023, Defendant Gainey participated in a twelve (12) minute-long interview, wherein he praised the positive cultural and economic impact Plaintiffs' Juneteenth Celebration had, and continues to have, on Defendant Pittsburgh.

31. Sometime in or about March of 2023, Mr. Wheatley informed Plaintiff B Marshall that Defendant Pittsburgh would allocate $125,000.00 to Plaintiffs' Juneteenth Celebration in 2023, and $125,000.00 to Plaintiffs' Juneteenth Celebration in 2024.

32. Thereafter, in April of 2023, Defendant Pittsburgh's City Council approved the above-described funding for Plaintiffs' Juneteenth Celebration through legislation.

33. In or about late May of 2023, Mr. Wheatley informed Plaintiff B Marshall that, because of the above-described funding, Defendant Pittsburgh would no longer provide free security for Plaintiffs' 2023 Juneteenth Celebration, nor would it continue to provide in-kind services.

34. On or about June 8, 2023, Plaintiff B Marshall held a press conference at the Point wherein he complained about Defendant Gainey's decision to withhold free security and in-kind services for Plaintiffs' 2023 Juneteenth Celebration.

35. Plaintiff B Marshall's complaint was widely reported within Defendant Pittsburgh, as well as by national media outlets.

36. In response to Plaintiff B Marshall's complaint, on or about June 9, 2023, Defendant Gainey held a press conference wherein he stated that Plaintiff B Marshall had lied, and that Defendant Pittsburgh had set aside $80,000.00 to pay for various services for Plaintiffs' 2023 Juneteenth Celebration including, but not limited to, security.

37. Defendant Gainey's statement was, and is, patently false.

38. On or about July 28, 2023, Defendant Pittsburgh, through its agents, submitted an application to DCNR to host a Juneteenth celebration at the Point from June 16, 2024, through June 22, 2024, despite Defendant Pittsburgh's knowledge of the Plaintiffs' longstanding business relationship with DCNR and/or the Point.

39. Upon information and belief, Defendant Pittsburgh's agents took the actions described hereinbefore above at the direction of Defendant Gainey in his capacity as mayor of Defendant Pittsburgh.

40. Defendant Pittsburgh, through its agents, took these actions without the knowledge or permission of the Plaintiffs.

41. Sometime thereafter, DCNR granted Defendant Pittsburgh's application.

42. On or about September 5, 2023, Deputy Mayor Jake Pawlak ("Pawlak") contacted the City Controller's Office on behalf of Defendant Gainey via letter, wherein Mr. Pawlak informed

that office that Defendant Gainey had decided to rescind the $125,000.00 that had been allocated for Plaintiffs' 2024 Juneteenth Celebration.

43. Defendant Gainey issued the above-described directive in his capacity as mayor of Defendant Pittsburgh.

44. In response to Defendant Gainey's directive, the City Controller's Office rescinded the $125,000.00 that had been allocated for Plaintiffs' 2024 Juneteenth Celebration.

45. On or about November 17, 2023, Plaintiffs received invoices totaling approximately $35,000.00 for services provided by Defendant Pittsburgh during Plaintiffs' 2023 Juneteenth Celebration.

46. Thereafter, Plaintiff B Marshall sent an email to Defendant Gainey, as well as local advocacy groups and media outlets, complaining about the above-described invoices in light of Defendant Gainey's prior statement that Defendant Pittsburgh had allocated $80,000.00 to pay for various services affiliated with Plaintiffs' Juneteenth Celebration.

47. In or about January of 2024, Plaintiffs publicly announced their planned programming for their 2024 Juneteenth Celebration. At that time, Plaintiffs submitted their annual application to DCNR to host the Juneteenth Celebration at the Point from June 17, 2024, through June 19, 2024.

48. On or about February 22, 2024, DCNR informed the Plaintiffs that their application had been denied because of Defendant Pittsburgh's previously granted application for the same event on the same dates.

49. On that same date, Plaintiff B Marshall contacted Defendant Gainey and Mr. Wheatley and requested a meeting to discuss the issues surrounding the 2024 Juneteenth Celebration.

50. In response, Mr. Wheatley informed Plaintiff B Marshall that Defendant Pittsburgh was "doing its own Juneteenth celebration," and that Defendant Pittsburgh was "in the process of putting out an open [request for proposal ("RFP")] for vendors to reply to help put together [Defendant Pittsburgh's] celebration. [Plaintiffs] are welcome to apply for this opportunity[.]"

51. Defendants' actions, as described hereinbefore-above, intentionally interfered with Plaintiffs' 10-year contract with DCNR.

52. On or about April 15, 2024, Defendant Gainey opened an RFP to the public for a grant to support an existing Juneteenth celebration – the amount of this grant was $125,000.00.

53. Upon information and belief, this grant was funded with the monies that were taken from the Plaintiffs.

54. Plaintiffs responded to the RFP and applied for the funding.

55. On or about April 30, 2024, Plaintiffs' application for funding was denied by agents of Defendant Gainey.

56. Instead, Defendant Gainey awarded the funding to Bounce Marketing, a company owned and operated by his family friend who had never planned, produced, or implemented, on its own or with any other organization, a Juneteenth celebration.

57. Thereafter, Defendant Gainey asked Defendant Pittsburgh's City Council to approve the allocation of funding to Bounce Marketing through legislation.

58. On or about May 21, 2024, Plaintiff B Marshall emailed Defendant's City Council and complained that the RFP process had been "predetermined."

59. On or about May 22, 2024, Plaintiff B Marshall attended a meeting of Defendant Pittsburgh's City Council, wherein he testified that the RFP process had been "rigged" by Defendant Gainey and/or his agents.

60. In response to questions by various members of Defendant Pittsburgh's City Council, Mr. Wheatley explained that Defendant Pittsburgh had decided to distance itself from the Plaintiffs after Plaintiff B Marshall held a press conference "blasting" Defendant Gainey and/or Defendant Pittsburgh for their refusal to provide in-kind services and free security at Plaintiffs' 2023 Juneteenth Celebration.

61. Despite Mr. Wheatley's admission, Defendant Pittsburgh's City Council voted 7-2 to approve Defendant Gainey's allocation of funding to Bounce Marketing.

62. Plaintiffs believe, and therefore aver, that Defendant Gainey exerted his power and influence as mayor over Defendant Pittsburgh's City Council to ensure that the funding to Bounce Marketing was approved.

63. On or about May 29, 2024, Defendant Pittsburgh's City Council voted 9-0 to provide the Plaintiffs with $125,000.00 from a different funding source to support Plaintiffs' 2024 Juneteenth Celebration.

64. However, agents of Defendant Gainey refused to release the above-described funding to the Plaintiffs until September 10, 2024, causing a delay in payment to Plaintiffs' vendors.

65. Plaintiffs hosted their Juneteenth Celebration at the Point from June 13, 2024, through June 17, 2024; this event attracted over 65,000 attendees and generated an estimated millions of dollars of income for Defendant Pittsburgh.

66. Bounce Marketing hosted its Juneteenth celebration on June 30, 2024; approximately 300 people attended.

67. On or about July 10, 2024, Defendant's City Council directed Defendant Gainey, through his agents, to disperse funds remaining from COVID relief sources to promoters of festivals and/or special events that experienced hardship during the pandemic.

68.	Plaintiffs sought $125,000.00 in funding from this source to support their 2024 Soul Food Festival; Defendant Gainey, through his agents, denied Plaintiffs' application.

69.	On or about December 10, 2024, Plaintiff B Marshall appeared with mayoral candidate Corey O'Connor and endorsed him to members of the public over Defendant Gainey.

70.	On or about March 1, 2025, Defendant Gainey was interviewed by a local podcast. During that interview, Defendant Gainey admitted that Defendant Pittsburgh had decided to distance itself from the Plaintiffs after Plaintiff B Marshall held a press conference, sent emails, and posted on social media criticizing Defendant Gainey and/or Defendant Pittsburgh for their refusal to provide in-kind services and free security at Plaintiffs' 2023 Juneteenth Celebration.

71.	During this same interview, Defendant Gainey claimed that Defendant Pittsburgh never wanted to "take over" Plaintiffs' Juneteenth Celebration and accused Plaintiff B Marshall of making false claims about being "bullied" by Defendant Gainey and/or Defendant Pittsburgh.

72.	Defendant Gainey's statements, as described hereinbefore-above in Paragraph 71, were, and are, patently false.

73.	In or about February of 2025, Plaintiffs submitted a timely application to Defendant Pittsburgh to host its 2025 Juneteenth Celebration.

74.	Defendant Gainey, through his agents, refused to process Plaintiffs' application for months, without any legitimate reason or purpose.

75.	During this timeframe, Defendant Gainey, through his agents, publicly claimed that Plaintiffs owed Defendant Pittsburgh approximately $17,000.00 in unpaid invoices stemming from services provided during Plaintiffs' 2023 and 2024 Juneteenth Celebrations.

76.	These statements were, and are, patently false.

77. As a result of the conduct described hereinabove in Paragraphs 74-75, Plaintiffs were unable to secure certain sponsors for their 2025 Juneteenth Celebration and lost substantial funding.

78. Plaintiffs were also forced to obtain legal counsel at a cost to them to compel Defendant Gainey, through his agents, to eventually process Plaintiffs' application to host their 2025 Juneteenth Celebration.

79. Defendant Gainey, through his agents, finally issued Plaintiffs their permit to host their 2025 Juneteenth Celebration on June 16, 2025, which was two (2) days prior to the event's scheduled start date.

80. On or about June 11, 2025, Plaintiffs submitted a timely application to host their 2025 Soul Food Festival from August 29, 2025, through August 31, 2025.

81. Defendant Gainey, through his agents, again refused to process Plaintiffs' application for months, without any legitimate reason or purpose.

82. On or about August 20, 2025, Plaintiffs received notice from Defendant Pittsburgh that their application would not be processed without a guarantee that the Plaintiffs would pay any applicable parking meter fees during the pendency of the festival.

83. Plaintiffs are aware of at least three (3) other recent festivals that were issued timely permits by Defendant Pittsburgh without paying meter fees.

84. These festivals include, but are not limited to, the Homewood Island Festival, Homewood Harambee, and Uptown Community Day.

85. Plaintiffs were not issued a permit until August 26, 2025, approximately two (2) days prior to scheduled set-up for their Soul Food Festival.

86. No rational basis exists for the difference in treatment between the Plaintiffs and these other festivals, as identified hereinbefore above.

87. Plaintiffs believe, and therefore aver, that Defendant Gainey's actions, in his capacity as mayor of Defendant Pittsburgh, were taken in retaliation for Plaintiff B Marshall's public complaints and criticisms of Defendant Gainey, as described more fully hereinbefore above.

COUNT I:

PLAINTIFFS v. DEFENDANT PITTSBURGH

VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION

RETALIATION

88. Plaintiffs incorporate by reference Paragraphs 1 through 87 as though fully set forth at length herein.

89. Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendant Pittsburgh for violations of Plaintiffs' constitutional rights under color of law.

90. At all times relevant hereto, pursuant to the First Amendment to the United States Constitution, Plaintiffs had the right to be free from retaliation for exercising their right to freedom of speech.

91. Plaintiffs' right to be free from retaliation for exercising their right to freedom of speech was violated by Defendant Pittsburgh when it withheld funding and services from Plaintiffs' Juneteenth Celebrations and when Defendant Pittsburgh failed to issue timely permits to the Plaintiffs, thereby affecting the success of Plaintiffs' Juneteenth Celebrations and Soul Food Festival.

92. As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant Pittsburgh, Plaintiffs suffered the following injuries and damages:

    a.    Plaintiffs' right under the First Amendment to the United States Constitution to be free from retaliation was violated; and

    b.    Plaintiffs suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendant Pittsburgh in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFFS v. DEFENDANT PITTSBURGH

VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>EQUAL PROTECTION – CLASS OF ONE</u>

93. Plaintiffs incorporate by reference Paragraphs 1 through 92 as though fully set forth a length herein.

94. As more fully described hereinbefore above, Defendant Pittsburgh refused to issue a timely permit to the Plaintiffs for their 2025 Soul Food Festival without a guarantee that the Plaintiffs would pay any applicable parking meter fees during the pendency of the festival.

95. Plaintiffs believe, and therefore aver, that other similarly situated festivals were granted timely permits by Defendant Pittsburgh without paying meter fees.

96. There was, and is, no rational basis for the difference in treatment between the Plaintiffs and other, similarly situated festivals, as more fully described hereinbefore above.

97. As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant Pittsburgh, Plaintiffs suffered the following injuries and damages:

    a. Plaintiffs' right under the Fourteenth Amendment to the United States Constitution to be free from retaliation was violated; and

    b. Plaintiffs suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendant Pittsburgh in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFFS v. DEFENDANT PITTSBURGH

VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

<u>MUNICIPAL LIABILITY</u>

98. Plaintiffs incorporate by reference Paragraphs 1 through 97 as though fully set forth at length herein.

99. Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendant Pittsburgh for violations of Plaintiffs' constitutional rights under color of law.

100. Defendant Gainey purported to act as a decision-maker for Defendant Pittsburgh in his capacity as mayor of Defendant Pittsburgh.

101. Defendant Gainey, as an official with decision-making authority, directly participated in and ratified the deprivation of Plaintiffs' constitutional rights, as more fully described hereinbefore above.

102. By reason of the aforesaid conduct, the Plaintiffs' civil rights as guaranteed by 42 U.S.C. §1983 and under the First and Fourteenth Amendments to the Constitution of the United States were violated by Defendant Pittsburgh.

103. As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant Pittsburgh, Plaintiffs suffered the following injuries and damages:

    a. Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution were violated; and

    b. Plaintiffs suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendant Pittsburgh in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV

PLAINTIFFS v. DEFENDANT PITTSBURGH

VIOLATION OF PLAINTIFFS' PENNSYLVANIA
COMMON LAW RIGHTS

INTENTIONAL INTERFENCE WITH A
<u>BUSINESS RELATIONSHIP</u>

104. Plaintiffs incorporate by reference Paragraphs 1 through 103 as though fully set forth at length herein.

105. Plaintiffs have a longstanding business relationship with DCNR and/or the Point.

106. Defendant Pittsburgh was aware of the business relationship between Plaintiffs and DCNR and/or the Point.

107. Defendant Pittsburgh intentionally interfered with the business relationship between Plaintiffs and DCNR and/or the Point when it obtained a permit to host a competing Juneteenth event at the Point during the same time that Plaintiffs intended to host their celebration at the same location.

108. As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant Pittsburgh, Plaintiffs suffered the following injuries and damages:

   a. Plaintiffs' Pennsylvania Common Law rights were violated; and

   b. Plaintiffs suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendant Pittsburgh in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V:

PLAINTIFFS v. DEFENDANT GAINEY

VIOLATION OF PLAINTIFFS' PENNSYLVANIA
COMMON LAW RIGHTS

<u>SLANDER</u>

109. Plaintiffs incorporate by reference Paragraphs 1 through 108 as though fully set forth at length herein.

110. As described hereinbefore above at Paragraphs 71, 74 and 75, *supra*, Defendant Gainey knowingly made false, misleading and malicious statements regarding Plaintiff B Marshall.

111. As a result of Defendant Gainey's false, misleading and malicious statements, Plaintiff B Marshall suffered personal humiliation and damage to his reputation.

112. Furthermore, Plaintiffs were unable to secure certain sponsors for their 2025 Juneteenth Celebration and lost substantial funding.

113. Defendant Gainey's actions were willful, wanton and/or done with a reckless disregard for Plaintiffs' rights, thereby subjecting Defendant Gainey to punitive damages.

114. As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant Gainey, Plaintiffs suffered the following injuries and damages:

    a. violation of Plaintiffs' rights under Pennsylvania Common Law;

    b. Plaintiff B Marshall suffered irreparable damage to his reputation; and

    c. Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendant Gainey in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the Defendant Gainey; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

                                                   JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
jsansone@joelsansonelaw.com
PA ID No. 41008
Elizabeth A. Tuttle, Esquire
etuttle@joelsansonelaw.com
PA ID No. 322888
Massimo A. Terzigni, Esquire
mterzigni@joelsansonelaw.com
PA ID No. 317165
Amanda N. Shields, Esquire
ashields@joelsansonelaw.com
PA ID No. 334025
*Counsel for Plaintiffs*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: August 27, 2025

18